Hi. Good afternoon, Your Honor. Tom Van Zandt, appellant, and I'd like to invite this court to consider the issue of whether a violation of California Code 15-610-30A3 using undue influence constitutes a willful and malicious injury such that a debt would be non-dischargeable under A-6. If the district court, if we thought that the district court was right in its hearsay determinations at the trial, right, is there any way you could have proven this violation without the information that was excluded? In other words, isn't that a logically prior question, because the legal – I understand there's a legal issue as to whether this would be a – would fit within the bankruptcy statute, but if there's no way you could have proven it, it doesn't make a difference, right? Well, the evidentiary issue on appeal was in regard to the fraud. I understand that, but if it was hearsay for that, it was hearsay for this. Yes, but there was – well, no, yes, that would be correct, but the undue influence is – was fairly established by the record and really would not rely on those particular statements. It wouldn't? No. I mean, you had some evidence of what was said. I have tremendous – If we don't have evidence of what was said to the – to Ms. Malis, then we don't have evidence. Yes, but by Apelli's – How can you prove undue influence if we don't know what was said to her? Well, by Apelli's own testimony, she said that she obtained the money by coming over to her good friend. There's no doubt that they were good friends. I've known both of them for more than 25 years. There's no doubt that they were good friends. It can't be that elderly people can't lend their friends money. No, that's true. But that would – if it amounts to undue influence under the law, then that's Okay. So what would make an undue influence under the law? Well, the – well, we can take a look at the statute, and the undue influence is defined there at – at 1575, and in the use by one in whom a confidence is reposed, I don't think it's questionable that my mother-in-law had a great deal of confidence in the Apelli to use such confidence for the purpose of obtaining an unfair advantage over them. So if you don't know what she said to get the money – Yes, she did testify as to what she said. She came to my mother-in-law and basically said, I'm having a lot of problems with my business, and it is in the record, and I can recall it fairly well. Basically the kind of – What in there would qualify as undue influence? That sounds like a conversation between friends, one of whom is in some kind of financial distress. Yes. Well, that's what – that's the protections we're going to now afford the elderly. And that's a matter for the legislature, and if I could just point out that we spend a lot of our – What evidence do you have of undue influence used by Ms. Mogundo against – on Ms. Malice? Oh, because – well, it's the nature of the loan itself that amounts to the unfair  I'm sorry. I didn't understand anything you just said. Yes. Well, the nature of the loan, the loan was not an arm's-length transaction. It was a loan between friends. It happens all the time. Yes, it does. But now that's what I'm inviting you to consider, that when it happens – Is there – are there California cases on 1575? No. And I was going to mention this. Now, I did not discover any cases myself, and I did look. I don't know of any interim cases that decided the issue. Are you asking us to hold that 1575 prohibits that kind of conversation? No. What kind of conversation? Well, that – are you asking us to hold that 1575 covers the kind of conversation you just described for us? For an 87-year-old woman, yes. That's right. So you're saying as a matter of law, if someone – if I approach my grandfather when he was alive a couple years ago, and he was 90, and I said, Grandpa, I really want to send my kid to this great school, but I'm a prosecutor, I can't afford it. Can you borrow – can I borrow this money from you? That's right then a – that's a violation of the law? Well, that's the – Because he was 90. Yeah. Well, it would have to – it would have to be the – an evaluation of the circumstances involved. But then if that's – if that's the violation of the law, then you really do have a problem under – Yeah. Under the bankruptcy statute. Well – Because it has to be willful and malicious. It doesn't sound very malicious. Right. Well, I would – I would get to that, but I – In other words, knowing what make up the violation is relevant to the legal – to the other legal question. Well, the question that I – I mean, I wouldn't want to say that no violation of – of – of 1575 could – could be within the bankruptcy statute, but that violation sure doesn't sound like it. Well, it would – I guess what I'm saying is that if it was shown that there was an undue influence in violation of the law – But we just were probing you as to what would constitute undue influence, and apparently it would be – Well – Lending – asking an elderly person who's your friend for money because you have a financial problem. And it appears on the statement that you just gave us, that statement could be entirely true. And that wouldn't constitute false pretenses, false representation, actual fraud under the bankruptcy statute. So you're – you're done. No. No, I don't think so, Your Honor. That's the point that the bankruptcy appellate panel made. I don't think you need to have intent to defraud. If it's a violation of this statute, it can be a willful and malicious injury. But it doesn't have to be. I – No, it doesn't have to be, and it would be the evidence. Now, in your case, when you ask your grandfather, is that something that a grandfather might want to provide for their – their grandchild anyway? They might provide for them without you asking. It's a – it's a – would be a factual issue as to whether this was something that the elderly person would have done. It's spelled out in the statutes as to what would constitute this undue influence, and it would certainly be the case that you would have to bring forward evidence that says, is this something that they would have done? Did they end up losing their money? Did the money go for something that normally people would have done this for? In this case, no. In this case, my mother-in-law was induced, but through the friendship of her – of an art dealer, to invest in a business that the appellee admits was losing money for the five, six years before that. But, counsel, let me ask you this, because I'm going to ask you about the 807 issue, because I think it kind of links back to this one. Let's assume for now that the bankruptcy court erred in its 807 ruling. Now, I'm not saying that's correct, but just for the analysis, let's assume that. So you would have gotten into evidence essentially the terms of the loan that your mother-in-law and the art dealer discussed. Is that right? Yes. Other statements about what the loan was going to be for and what the loan constituted and investment in her gallery, the statements are all there in the record. Sure. So let's assume all of that came into evidence. That would indicate fraud. How? That's what I'm trying to understand. Because those statements were clear misrepresentations as to what the money would be used for, when it would be paid back, how it would be paid back, and what the – and whether or not it constituted an actual investment in the business. But, counsel, under 523A6, you have to prove more than just fraud. You actually have to prove that the art dealer was going to take the money and had no intention of ever paying it back. No. I don't believe that's correct, Your Honor. And not only do you not have to do – show more than just fraud, you do not have to show fraud or any fraudulent intent. For 523A6? Yes. And that's what I'd like you to look at and that's what I'd like you to consider. Can you cite a case that says – No, I can't. And I – Okay. Because, you know, there's pretty clear Supreme Court authority and they're pretty used to smacking us down when we disagree with them. So where is that? Let me tell you. When we ask that then, for undue influence, for a violation of the statute, no fraud is required, no intent to. Which statute are you talking about, 523A6 or the state? The state. Okay. The state law. Put the state one aside because when you go to trial in bankruptcy court, yes, you have to prove 523A6. That was the goal here. Willful and malicious. Right. So how can something be willful and malicious if you don't have an intent to defraud? Okay. A battery is willful and malicious. And it's certainly covered by 523A6. But that's not – Well, I'm just saying a violation of the law can be willful and malicious violation. I understand your point. My understanding of your argument, and that's why I think you go back to the undue influence question, is that the injury was making a risky loan. Yes. The injury itself is taking an elderly's property, using undue influence. And it's irrelevant whether you intended to pay it back. And even intending to pay it back when it was risky, whether you could pay it back. Even if you do pay it back. You've still violated the law. I could go – I could have two kids for you. But then we're back to a construction of the California statute. Yes. And that's what you should be looking at. And whether that would be – whether the kind of undue influence that you're suggesting would be willful and malicious for purposes of 523A6. I believe it would. Why is that? I have the Jersich case, which I've cited, which had to do with withholding an employee's money that you owed them. And it doesn't have to do with undue influence. But it says where there is an identified public interest by the legislature, that that in itself, violating that law, will be a willful and malicious injury. And it goes through the analysis of what it is. But you have to look at what is the injury that is addressed by this law. The injury is not losing your money. The injury is having elderly people deprived of their resources and put at risk, even if they pay it back. If I take some money from an elderly and run out to the racetrack and I happen to win and pay them back, I probably won't get sued by them. But I've still violated the law. If I lose, I'll probably get sued. But how is that a violation of 523A6? Can you cite any authority? I think your racetrack one is a very good place to start. Under your racetrack analogy, if your intent was always to pay the person back, but I know that lucky strike is going to win race three, can you cite as a case saying under those scenarios, that scenario, that is a violation of the bankruptcy law, 523A6? No. I don't have any cases. That's what I initially wanted to explain. I did contact a research attorney, a Mr. Shabani.  My case that comes closest is Jersich in which they looked at what are the fundamental interests of our society. Now, we need to be able to Sorry, Jersich was a California case or a bankruptcy case? A Ninth Circuit bankruptcy California case, yes. And what it looked at is if there's an underlying fundamental policy of the government and it's violated, that is a willful and malicious injury. When it comes to the elderly, we have much of our judicial resources, much of our legislative resources go into protecting the elderly, and for very good reason. We want to see them transition. Are you arguing that the fact that California has this law and that you believe that this would violate that law is sufficient to make it a willful and malicious injury? Yes. Or that there's independent judgment under the Federal statute as to whether it's a willful or malicious injury? Yes, a violation of the law, yes. And that's how the bankruptcy law is applied, by looking to the State law. Where does it say that, that it's automatically the case? Well, it's not automatically the case, but it is applied that way. And in the Jersich case, it certainly was. So in You mean anything that California regards as a tort? Yes, a tort, a willful and malicious tort. Now, this is not a strict liability situation using undue influence. It is not the case that this is strict liability, and strict liability is outside of A6, because there was no willful intent to have this happen. But the intent does not have to be to actually take and lose the money for the elderly. The intent has to be only in regard to using undue influence to obtain their money. Whether you pay it back partially or in full, you've still violated the law. And it's If you want to reserve any time, you should do it now. Okay. I'll reserve this 1-1⁄2 minutes. Thank you. Good afternoon. My name is Stephen Finestone. I represent the appellee and debtor and defendant below Ms. Mbunda. And I had a lot of prepared remarks, which I'll probably get to, but I wanted to respond to some of the issues that you raised in questions of Mr. Van Zandt. You asked him about this issue of undue influence and whether there were facts or any evidence. The point, I think, that's more important and the point that the Bankruptcy Appellate Panel picked up on is undue influence is a perfect example of something that would be a violation of the California statute, along with unfair advantage, wrongful use of funds. Those things would be a violation of the California statute, but they're not a violation or they don't create liability under 523-86. But presumably they could, depending on the facts. I mean, the statute does not — 523-86 doesn't require that — it doesn't — it neither states that anything that's a California tort is a willful or malicious injury or that something that might — isn't a California tort isn't a willful or malicious injury. Correct, Your Honor. I think the point that the appellant is trying to say is I found a California law, there's a violation of it, therefore I've met 523-86. And this Court in Carrillo v. Sue said you have to find two things. So there could be violations of the California statute that are willful and malicious injuries. Absolutely, Your Honor. Yes. Yes. The point is that you cannot say there's a violation of this law when a lot of conduct would not rise to the willful and malicious standard, and that's what you have here. I mean, getting away from the fact or ignoring the fact that there's no evidence of any of this, but Carrillo v. Sue says you have to find willfulness, subjective intent to harm or subjective belief that harm is substantially certain. You have to find malice, which is a wrongful act. But the one point on which I — it seems to me that your opponent may be right is that the injury in this context doesn't have to be an intent not to pay it back. I mean, it could be an intent to take out a risky loan that might not be paid back, even though you intend to pay it back. Well, I disagree, Your Honor, and the reason for that is you have to have intent to harm. So the fact that you intended the lender to make a risky loan and you're trying to convince the lender to make a risky loan is not — that doesn't — that's not intentional harm. Why? Because you're intending to pay it back. But the fact that the lender, that there's a risk to this — Well, you don't have any money, but I'm going to get it somewhere and I'm going to pay it back. And that doesn't seem right to me, but I don't think you need that. What if you disclosed — what if you disclosed to the lender that you were going to the track, and that you were going to double their — you were going to double their money? Right. I mean, I think that would not create a 523-A6 claim, Your Honor, because you're not intending willful and malicious injury to that party. And in this case, it showed — there's evidence that the money was borrowed, the money was used to pay a lot of the vendors and the creditors of my client, and some of the money was, in fact, used to pay her back. She received roughly $40,000 to $50,000 of repayments under this loan. So I don't think, Your Honor, getting back to your question, the notion that somehow the minute you borrow the money, there's — If you tell — suppose you tell somebody — and there are cases like this in terms of criminal fraud cases — you know, I have plenty of money and I'm going to pay you back from the — you know, my bank account. In fact, you don't have the bank account, but you have — you're convinced you're going to get the money and you fully intend to pay them back. That's a fraud, isn't it? It would be a fraud, yes. But even if you intended to pay them back? Yes. No, because you're obtaining the money under false representations. Okay. And if you didn't — even if you didn't make the false representation, but in fact you don't have any money, but you do intend to pay them back, but it's still a risky loan, that couldn't be a willful and malicious injury? I don't believe so, Your Honor, no. So I think what the BAP talked about is that once you exclude undue influence and once you exclude unfair advantage and misuse of funds, these things that don't rise to a 523A6, all you're left with under the State statute is the intent to defraud, which would be a violation of the State statute and which would create liability under the Bankruptcy Code. But the point the BAP made, and the point that I want to reiterate, is that that is what the appellant tried. That's what the Court allowed the appellant to put on under 523A2, which is a fraud statute. And so the appellant was allowed to put on his evidence with respect to the fraud claims, couldn't meet his burden under the fraud claims, in a large part because there was no evidence. And so this brings me, I think, Judge Owens, you talked — mentioned this briefly, which is, you know, what about the exclusion of the evidence? And so let me address some of that briefly, which is that the judge — the bankruptcy judge listened to what the evidence was, was going to be, which were statements of Mr. Banzan about what his mother-in-law had said to him roughly five years after the transaction in question. And they were statements, and I think Mr. Banzan did a fair recitation of what he had hoped to say, that she thought she had an investment and she thought she was going to be paid back, and she thought she might have security in the — in the goods, and what she thought the items were going to be, what the money was going to be used for. And what the Court — the Court didn't allow those in because of the hearsay, and didn't allow them in under 807 because there were not the guarantees of trustworthiness. Well, he gave a different reason, and his reason is wrong, but it appears that they wouldn't have come in anyway. Correct, Your Honor. Yeah. The BAP said that — the Bankruptcy Court did not go through that full analysis. The Bankruptcy Court said unless they're coming in for the truth, they're not relevant. So if they're coming in for the truth, it's hearsay. The Bankruptcy Court felt that if there's a specific statute that would allow these evidence in, you can't go around the back door and use 807 to get these statements in. The BAP did a different analysis where it said that, you know, you couldn't get these statements in under 807 because there were not the usual items of trustworthiness. They weren't recorded. They weren't under oath. There was no writing from either Ms. Malice or from Mr. Van Zandt about what had been said. There was no corroborating evidence. There's no other evidence to suggest that — that these statements were accurate. And I think what was important to the Bankruptcy Court and important to the Bankruptcy Court's appellate panel is that the statements, one, were made five years after the fact. Two, the statements were about what Ms. Malice believed in 2010, which is not necessarily what the appellant wanted to say is she believed this in 2010, therefore, Bankruptcy Court, you should jump back and assume in 2005 that Ms. Mbunda made representations to her in 2005 that led her to believe these things. And the Bankruptcy Court said, you know, I can't get there. The judge said I can't make that leap from what she believed in 2010, even if I were to admit the evidence, to what might have been represented in 2005. So we think the 807 exception wouldn't apply and it was proper to exclude this testimony from the court, from the trial. And one other thing that the BAP talked about is that, you know, there was a course of conduct between the parties from when the loan was made until 2010 when these represent — when these memories were recited to Mr. Van Zandt. And so it's far from clear that her belief in 2010 wasn't the result of interactions between the parties from 2005 to 2010 and, again, would not get the party or the court back to what was represented in 2005. So even if the court had admitted the evidence, the evidence would not have created liability under 523A2 because there was still no evidence of what had been represented and that — no proof that that representation was false. I think we've talked enough about 523A6 and the reasons why we don't think there was any way — you know, and by the way, I wanted to add that I think — I think it was you, Judge Bybee, who asked what were the facts. In other words, there's no facts both before the bankruptcy court, before the bankruptcy appellate panel, and before this Court, the appellant has not identified any facts that would be added that he could add to the claim under 523A6. So that gets us back to the discussion we already had, which is, aha, there's a violation of a statute, therefore willful and malicious injury. I don't think the law allows the Court to conclude those things because the statute in question includes a lot of conduct that's not willful and malicious injury. And I will rest there unless any of you have any further questions. Thank you very much. Thank you, counsel. Thank you. You have a minute and a half. Yes, thank you. And I'd just like to say about the 807 issue is the judge was applying the minority rule, that's not the rule of the circuit. Well, that's true, but I don't see how you could possibly meet the standard. Oh, well, then, I mean, then if he did misapply, if you agree with that, then I guess it's up to this Court to take a look at it. Why not? Excuse me? Why not? I think you should take a look at it, then. Because he didn't do an analysis. Well, yes. And if we looked at it, how could we not come to the conclusion that this doesn't meet the standards, because there's an ad or even if it did meet the standards, it isn't pertinent to what you were trying to prove. I have it all in my opposition to motion in Limney, which the trial court, Judge Montali, said, I'm just going to do these one at a time. But when he got to them, he said, you know, you can't use 807 if something else works against you. I understand that. Okay. I think we're with you on that one. The question is that let's apply the right standard. Can you cite any authority that says under these facts this would come in under 807? Well, I'd have it all in my – I could go through it all, maybe out of the top of my head, but I have it all in my opposition to motion in Limney. Okay. And in my brief. So you would stand on that, then? Yes. Okay. And also, I just wanted to point out that you have to look, in terms of the 1561030a3, you have to look at what is the actual harm that the statute is trying to protect against. And if you look at that and if you look at the analysis done in the Zersich case, you can find – you will see that this could be a willful and malicious injury. Now, the – my counsel might say, well, not under these cases, not under these circumstances. But please, don't hold that in finding a decision on this issue, because it's an important issue. And I hope that my ineptitude in presenting this matter will not bear on the outcome, because this has repercussions beyond the party. I don't think it would be right to find that somebody could unduly influence an elder in violation of the statute and discharge that debt in bankruptcy. If in our time what has – was always immoral has now become illegal because the legislature deemed that it should be illegal, then bankruptcy protection can be withheld while still maintaining a strict construction of the exceptions that were determined by Congress. Okay. Thank you both very much. Thank you, counsel. The case of Van Zandt v. Navunda is submitted and we are in recess. Thank you very much. All rise.
judges: Berzon, Bybee, Owens